**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x
MIMI SAMUELS, MECHEL HANDLER, :
DEBRA BASSAN, DINAH PINCZOWER, :
LEO SIEGMAN as Administrator for the :
ESTATE OF RACHEL SIEGMAN, EDWARD :    **OPINION & ORDER**
COHN, individually and as Administrator for :    14-CV-04401 (DLI)(VMS)
the ESTATE OF STEVEN DEARAKIE, :
:
                 Plaintiffs, :
:
         -against- :
:
AVIVA GREENBERG, SAM GREENBERG, :
and JOHN DOES "1" through "10," :
:
             Defendants. :
------------------------------------------------------------ x
**DORA L. IRIZARRY, United States District Judge:**

     Plaintiffs Mimi Samuels, Mechel Handler, Debra Bassan, Dinah Pinczower, Leo Siegman

as Administrator for the estate of Rachel Siegman, and Edward Cohn, individually and as

Administrator for the estate of Steven Dearakie (collectively, "Plaintiffs") bring this action

alleging that defendants Aviva Greenberg ("Ms. Greenberg") and Sam Greenberg ("Mr.

Greenberg," and together with Ms. Greenberg, "Defendants") wrongfully converted an ancient

handwritten bible (the "Bible") purportedly belonging to Plaintiffs, as heirs to the rightful owner.

(*See* Plaintiffs' Complaint ("Compl."), Docket Entry No. 1.) Currently pending before the Court

is Defendants' motion, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of

Civil Procedure, to dismiss the Complaint for lack of subject matter jurisdiction, lack of personal

jurisdiction, and failure to state a claim upon which relief can be granted. (Docket Entry No. 10;

*see generally* Defs.' Mem. in Supp. of Mot. to Dismiss ("Def. Br.") Docket Entry No. 11.)

Plaintiffs oppose, (*see generally* Pls.' Mem. in Opp'n to Mot. to Dismiss ("Pl. Opp'n"), Docket

Entry No. 26), and by separate motion seek to supplement their Opposition to Defendants'

motion to dismiss.  (Docket Entry No. 43.)  For the reasons set forth below, Plaintiffs' motion to supplement their Opposition is denied as moot, and Defendants' motion to dismiss the Complaint is granted.

## BACKGROUND

### I. The Arakie Bible

This action concerns a dispute over an ancient and allegedly priceless handwritten, hard-bound set of the Five Books of Moses (the "Bible").  (*See* Compl. ¶ 1.)  Plaintiffs claim equal and joint ownership of the Bible as the children and heirs of David C. Arakie ("Arakie") and his wife Hannah, who purportedly owned the Bible as a family heirloom and gifted it to their five children:  Edward Cohn ("Cohn"), Leah Handler, Dinah Pinczower, Rachel Siegman, and Steven Dearakie.[1]  (*See id.* ¶¶ 14-16; Decl. of Edward Cohn in Opp'n to Defs.' Mot. to Dismiss ("Cohn Aff.") ¶ 5, Docket Entry No. 27.)

Although Cohn recalls seeing the Bible in Arakie's possession several decades ago, its whereabouts since that time have been in doubt and presently are not known with certainty.  (*See* Compl. ¶ 11; Cohn Aff. ¶ 6.)  However, prior to his death in 1973, Arakie allegedly told Cohn that in or around 1960 he lent the Bible to a religious scholar from Montreal, Canada by the name of Reverend Zalmen Gurewicz ("Gurewicz").  (*See* Compl. ¶¶ 18-19; Cohn Aff. ¶ 7.)  Pursuant to an understanding between the two men, Gurewicz was to use the Bible briefly for an

---

[1]  Leah Handler, Rachel Siegman, and Steven Dearakie are deceased.  (Compl. ¶¶ 2, 6, 8.)  Handler's alleged one-fifth interest in the Bible is represented in this action through her three children, Plaintiffs Mimi Samuels, Mechel Handler, and Debra Bassan, who claim their mother granted them her ownership interest by *inter vivos* gift.  (*Id.* ¶¶ 2-4.)  Siegman's alleged one-fifth interest is represented through the administrator of her estate, Leo Siegman. (Compl. ¶ 6.)  Finally, Dearakie's alleged one-fifth interest is represented through Cohn, as administrator of his brother's estate.  (*Id.* ¶ 8.)

academic study and then return it to Arakie.[2]  (Compl. ¶ 18; Cohn Aff. ¶ 7.)

Plaintiffs allege that the Bible was never returned. (Compl. ¶ 21.)  Instead, at the time of Arakie's death in 1973, it was still in the possession of Gurewicz.  (*Id.* ¶¶ 19, 21.)  Gurewicz himself died in 1987, survived by his daughter, Ms. Greenberg.  (*Id.* ¶ 20; Cohn Aff. ¶ 10; Decl. of Sam Greenberg in Supp. of Defs.' Mot to Dismiss ("S. Greenberg Aff.") ¶ 3, Docket Entry No. 19, with Ex. A.)  Cohn subsequently undertook efforts to locate the Bible and, at some point in the early part of 2000, learned that Ms. Greenberg was Gurewicz's direct descendant and lived in Montreal with her husband, Mr. Greenberg.  (Cohn Aff. ¶ 10.)  Cohn thereafter contacted Ms. Greenberg, who claimed to have no knowledge of the Bible but promised that she would look for it among her late father's possessions.  (*Id.* ¶¶ 11-12.)

In or around 2003, Cohn allegedly found an old letter to Arakie from a former business associate.  (*Id.* ¶ 13 with Ex. A.)  Dated June 13, 1963, the letter stated that the associate planned to pass through Montreal and would meet with Gurewicz to reclaim the Bible.  (*See* Ex. A to the Cohn Aff.)  Cohn immediately forwarded the letter to Defendants, urging them to resume their search for the Bible.  (Cohn Aff. ¶ 14.)  Shortly thereafter, Ms. Greenberg allegedly contacted Cohn and informed him that she had located the Bible, packed away neatly in her father's suitcase in the basement of her Montreal home.  (*Id.* ¶ 15.)

Ms. Greenberg allegedly promised to return the Bible.  (*Id.* ¶ 16.)  Given the Bible's value and fragile condition, Cohn insisted on traveling to Montreal to retrieve it in person.  (*Id.*)  Cohn claims that he spoke to Ms. Greenberg in 2004 regarding his anticipated trip to Montreal.  (*Id.* ¶ 17.)  Ms. Greenberg allegedly admitted that Cohn and his family were the rightful owners of the Bible, but expressed concerns about where it ultimately would reside and, therefore, told

_____

[2]  The Court notes a discrepancy in Plaintiffs' submissions:  the Complaint at paragraph 18 states that Gurewicz was to return the Bible to  Arakie's son, Steven Dearakie.  (Compl. ¶ 18.)  Plaintiffs' Opposition, however, states that the Bible was to be returned to Arakie himself.  (*See* Pl. Opp'n at 4.)

Cohn that she had reconsidered her agreement to hand it over. (*See id.* at 17-18.) To avoid antagonizing Ms. Greenberg, Cohn canceled his trip to Montreal. (*Id.* ¶ 19.)

At an impasse, in 2008, Cohn initiated a Rabbinical arbitration in New York to recover the Bible from Defendants. (*Id.* ¶ 20.) Defendants allegedly participated in the arbitration initially, but later withdrew after telling the arbitrator that Ms. Greenberg had donated the Bible already. (*Id.* ¶¶ 20-21.) The arbitrator thereafter issued a default judgment against Defendants, notifying Ms. Greenberg by letter dated December 23, 2008, stating in relevant part:

> At some point you had informed us that you had given [the Bible] as a donation to a Synagogue. It is unthinkable that you could even think of doing so after all the efforts were made by Cohn and his family to make very clear to you that it was not your belonging and that it was requested to be returned to the above mentioned rightful owners. Cohn and his family now have permission to take you to any secular court to retrieve their above mentioned book and use all other legal means which may lead to the book being returned to them.

(*See* Ex. B to the Cohn Aff.) Cohn repeatedly tried to contact Defendants following the arbitration, but, when those attempts proved unsuccessful, he did not escalate his efforts to recover the Bible. (*See* Cohn Aff. ¶ 22.)

In late 2011 or early 2012, Cohn enlisted the help of his nephew, Plaintiff Mechel Handler ("Handler"), to recover the Bible. (*Id.* at 24; Decl. of Mechel Handler in Opp'n to Defs.' Mot. to Dismiss ("Handler Aff.") ¶¶ 4-5, Docket Entry No. 28.) After several unsuccessful attempts to contact Defendants, Handler learned that they were not in Montreal, but instead were staying at a second home in Boca Raton, Florida, while Mr. Greenberg convalesced from a stroke. (Handler Aff. ¶¶ 6-9.) Handler thereupon contacted a Rabbinic colleague in Florida, Rabbi Sholom Lipskar ("Lipskar"), to request that he serve as an intermediary in proposed discussions with Defendants. (*Id.* ¶ 8-10 with Ex. C.) However, Lipskar soon broke

off contact with Handler and the proposed discussions with Defendants never came to fruition. (*See* Handler Aff. ¶ 11.)

At that point, Handler allegedly informed the rest of his family that Defendants were in possession of the Bible. (*Id.* ¶ 11.) Together, they retained an attorney to send a letter to Defendants, dated November 21, 2013, formally demanding the immediate return of the Bible. (*Id.*; Decl. of Evan M. Newman in Opp'n to Defs.' Mot. to Dismiss ("Newman Aff.") ¶ 2, Docket Entry No. 29, with Ex. D.) In January 2014, Plaintiffs' attorney was contacted by Jennifer Vitullo ("Vitullo"), a personal assistant to Defendants who claimed to speak on their behalf. (Newman Aff. ¶ 3.) She allegedly stated that Defendants had the Bible, but would not return it, though she declined to explain why. (*Id.*; *see also* Cohn Aff. ¶ 25; Handler Aff. ¶ 12.) Thereafter, on July 21, 2014, Plaintiffs commenced the instant action, asserting claims against Defendants for conversion, replevin, breach of fiduciary duties, and declaratory and injunctive relief. (Compl. ¶¶ 27-52.)

## II.     The Torah Scroll

Defendants allege that they have never known of or possessed the ancient, hard-bound Bible sought by Plaintiffs. (S. Greenberg Aff. ¶ 11; Decl. of Aviva Greenberg in Supp. of Defs.' Mot to Dismiss ("A. Greenberg Aff.") ¶ 7, Docket Entry No. 18; Reply Decl. of Aviva Greenberg in Supp. of Defs.' Mot. to Dismiss ("A. Greenberg Reply Aff.") ¶ 6, Docket Entry No. 36; Reply Decl. of Sam Greenberg in Supp. of Defs.' Mot. to Dismiss ("S. Greenberg Reply Aff.") ¶ 5, Docket Entry No. 37.) In addition, both Lipskar and Vitullo questioned Defendants about the Bible at Plaintiffs' urging, and similarly allege that Defendants denied knowing of its existence. (Decl. of Sholom Lipskar in Supp. Of Defs.' Mot. to Dismiss ("Lipskar Aff.") ¶ 8,

Docket Entry No. 38; Decl. of Jennifer Vitullo in Supp. Of Defs.' Mot. to Dismiss ("Vitullo Aff.") ¶¶ 6-7, Docket Entry No. 39.)

Defendants also dispute much of Plaintiffs' account of the communications they allegedly had with Defendants over the past several years in the course of trying to recover the Bible. For the most part, Defendants claim that those communications never happened or, if they did, they do not recall them. (*See* A. Greenberg Reply Aff. ¶¶ 6-12; S. Greenberg Reply Aff. ¶¶ 5-8.) However, Defendants admit that, during his lifetime, Gurewicz was in possession of a Torah scroll ("Torah") that he may have received from Arakie. (A. Greenberg Aff. ¶ 2; S. Greenberg Aff. ¶ 2; A. Greenberg Reply Aff. ¶ 5; S. Greenberg Reply Aff. ¶ 4.) Prior to his death in 1987, Gurewicz donated the Torah to a synagogue in Montreal, the Congregation Chevra Kadisha B'nai Jacob Beit Hazikaron Beth Hillel ("The Chevra"). (*See* A. Greenberg Aff. ¶¶ 3-5; S. Greenberg Aff. ¶¶ 3-4 with Ex. B; A. Greenberg Reply Aff. ¶ 5; S. Greenberg Reply Aff. ¶ 4; Lipskar Aff. ¶ 8.) Based on an appraisal performed in 2014, the Torah is approximately 80 years old and has an estimated value between $2,000 and $15,000. (*See* S. Greenberg Aff. ¶¶ 8-9 with Exs. C and D.) Plaintiffs nevertheless insist that it is the Bible, and not the Torah, that is the subject of this lawsuit and its claim of wrongful conversion. (*See* Ex. A to the Decl. of Courtney E. Topic in Supp. of Defs.' Mot. to Dismiss, Docket Entry No. 17.)

### III. The Instant Motions

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and on the grounds that the Complaint is time-barred and fails to state a cause of action. (*See* Def. Br. at 4-21.) While the motion to dismiss was pending, the Court denied Defendants' request for a protective order staying discovery, and document and deposition disclosure between the parties proceeded. (*See* Orders dated Oct. 6, 2014, Oct. 30,

2014, and Dec. 23, 2014.) In the course of discovery, Defendants produced a declaration page to a homeowner's insurance policy covering an apartment in Manhattan, New York. (*See* Docket Entry No. 43 with Ex. B.) Plaintiffs thereupon moved to supplement their Opposition to the motion to dismiss with documents pertaining to the insurance policy, arguing that they should have been produced as initial disclosures. (*See* Docket Entry No. 43.) Plaintiffs contend that the insurance policy confirms that this Court has jurisdiction over this matter, and likely proves Defendants' possession of the Bible. (*See id.*)

## LEGAL STANDARD

### I. Applicable Standard On A Motion to Dismiss

#### a. *Rule 12(b)(1)*

It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa P.C. v. Dupont*, 565 F. 3d 56, 62 (2d Cir. 2009) (internal quotation marks and citation omitted). Thus, "[a] court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

"Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists." *Correspondent Servs. Corp. v. JVW Inv., Ltd.*, 2004 WL 2181087, at *6 (S.D.N.Y. Sept. 29, 2004), *aff'd* 442 F.3d 767 (2d Cir. 2006). The party asserting subject matter jurisdiction must prove by a preponderance of the evidence that the court has such jurisdiction. *See Id.*; *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003);

*Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).   On a motion to dismiss for lack of subject matter jurisdiction, the court must accept as true all material and non-conclusory factual allegations contained in the Complaint, but should not draw argumentative inferences favorable to the party asserting jurisdiction.  *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *see also JVW Inv., Ltd.*, 2004 WL 2181087, at *6.  Although courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss, on a challenge to the district court's subject matter jurisdiction, the court "may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings."  *JVW Inv., Ltd.*, 2004 WL 2181087, at *6 (citing *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 161 n.30 (2d Cir. 2003)).

### b.  Rule 12(b)(6)

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555)).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To resolve such a

motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## DISCUSSION

### I.       Subject Matter Jurisdiction

The Complaint alleges jurisdiction pursuant to 28 U.S.C. § 1332 ("§ 1332"), which grants to district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between diverse citizens. *See* 28 U.S.C. § 1332(a). Defendants nevertheless contend that jurisdiction is lacking, arguing that the amount in controversy is well below the $75,000 threshold for diversity jurisdiction. (*See* Def. Br. at 20.) However, for purposes of determining whether the jurisdictional amount required by § 1332(a) is met, the damages pleaded in a complaint "control[ ] if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Accordingly, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.*

For at least two reasons, the Court is unable to conclude to a legal certainty that the amount in controversy in this action is less than $75,000. First, Defendants' estimation that only $2,000 to $15,000 is at stake is based on a valuation of the 80-year-old Torah, not the ancient Bible that Plaintiffs claim is the true subject of this lawsuit. (*See* Def. Br. at 20; S. Greenberg Aff. ¶¶ 8-9 with Exs. C and D.) Plaintiffs allege that, unlike the Torah, the Bible is a rare artifact of ancient provenance, and similar items of Judaica have sold recently for millions of dollars. (*See* Compl. ¶ 17; Cohn Aff. ¶ 3; *see also* Pls.' Opp. to Defs.' Mot. for Protective Order, at 3, Docket Entry No. 22.) Having pleaded in apparent good faith that the Bible's value is in excess of $75,000, Plaintiffs are entitled to a presumption that the jurisdictional amount is satisfied. *See Scherer v. Equitable Life Assur. Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003); *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).

Second, where a claim for conversion involves property that is "unique and irreplaceable," as is the case here, New York courts have held that the proper measure of damages corresponds to the "value of the item at trial." *See Pagliai v. Del Re*, 2000 WL 122142, at *1 (S.D.N.Y. Jan. 31, 2000) (quoting *Hoffman v. Dorner*, 86 A.D.2d 651, 651-52 (2d Dep't 1982)); *see also Matter of Rothko*, 56 A.D.2d 499, 503-04 (1st Dep't 1977), *aff'd* 43 N.Y.2d 305 (1977). Because the Bible is alleged to have unique historical, religious, and scholarly value, at this stage of litigation, the uncertainty as to its worth is appropriately resolved in favor of Plaintiffs' apparent good faith in pleading damages in excess of $75,000. *See Pagliai*, 2000 WL 122142, at *1. Accordingly, the Court finds that the jurisdictional amount required under § 1332(a) is satisfied.

That determination does not end the Court's jurisdictional inquiry, as § 1332(a) also requires complete diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a). While

Defendants in their motion do not dispute that such diversity exists, "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). Furthermore, diversity of citizenship "should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (quoting *Wolfe v. Hartford Life & Annuity Ins. Co.*, 148 U.S. 389, 389 (1893)).

Here, while Plaintiffs are from New York and New Jersey, the record before the Court initially was insufficient to support a determination of Defendants' citizenship. The threadbare allegations in the Complaint concerning Defendants' residency in "Florida and Canada" raised the possibility that Defendants are either U.S. citizens domiciled abroad, or are dual citizens of U.S. and Canada domiciled abroad. (*See* Compl. ¶ 12.) In either instance, this Court would be deprived of diversity jurisdiction. *See Amity Partners v. Woodbridge Associates, Ltd. P'ship*, 2013 WL 6096524, at *1 (D. Conn. Nov. 20, 2013) ("[An] American citizen . . . who is domiciled abroad is considered 'stateless' for purposes of diversity jurisdiction; consequently in such a circumstance, subsection 1332 cannot be satisfied and diversity jurisdiction is not present"); *Cornwall Mgmt. Ltd. V. Thor United Corp.*, 2013 WL 5548812, at *2 (S.D.N.Y. Oct. 8, 2013) ("[T]he language of 1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity"); *see also Lemos v. Pateras*, 5 F. Supp. 2d 164, 165 (S.D.N.Y. 1998) (the "emerging consensus among courts" is that a national citizen of the United States and a foreign nation, who is domiciled abroad, is not a "citizen or subject of a foreign state" under § 1332(a)(2));

Accordingly, the Court ordered the submission of affidavits to more clearly establish Defendants' national citizenship and domicile. Based on those submissions, as well as other evidence in the record, the Court finds that Defendants are citizens of Canada and are domiciled in Montreal, Canada. (*See* Decl. of Aviva Greenberg Regarding Citizenship ¶¶ 1-8, Docket Entry No. 63; Decl. of Sam Greenberg Regarding Citizenship ¶¶ 1-10, Docket Entry No. 64; Dep. of Aviva Greenberg at 7:10-18; 12:12-22, 22:23-23:7, Docket Entry. No. 55-6; Dep. of Sam Greenberg at 13:8-14, Docket Entry No. 55-7.) It follows that Defendants are "citizens or subjects of a foreign state" within the meaning of § 1332(a)(2), and, thus, this Court properly has jurisdiction over this matter pursuant to that subsection.[3]

## II.      Choice Of Law

As a threshold matter, the Court must determine the law applicable to Plaintiffs' claims. To make that determination, "[a] federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). New York, the forum state here, has "adopted a flexible choice of law approach and seek[s] to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (internal quotation marks omitted). In this case, Plaintiffs, predominantly citizens of New York, claim that the Bible is New York property originally possessed by Arakie in New York, and demand that the Bible be returned to New York.

---

[3]  28 U.S.C.§ 1332(a)(2) provides district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of a State and citizens or subjects of a foreign state."  To sustain jurisdiction under this subsection, it is not necessary that all plaintiffs be from the same U.S. State. *See Jaffe v. Boyles*, 616 F. Supp. 1371, 1374-75 (W.D.N.Y. 1985); *see also Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 858-60 (11th Cir. 2000).

Moreover, while the parties do not address choice of law in their papers[4], they rely exclusively on New York law in making their arguments. *See Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.") Accordingly, the Court concludes that New York law governs this dispute, and it is equally clear that New York's statute of limitations applies to Plaintiffs' claims. *See, e.g., Iacobelli Constr., Inc. v. Cnty. Of Monroe*, 32 F.3d 19, 27 (2d Cir. 1994); *Lia v. Saporito*, 909 F. Supp. 2d 149, 161-62 (E.D.N.Y. 2012), *aff'd* 541 Fed. App'x 71 (2d Cir. 2013).

## III.    Statute Of Limitations

"Although the statute of limitations is an affirmative defense, it may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Bastien v. Samuels*, 2014 WL 5306016, at *3 (E.D.N.Y. Oct. 15, 2014) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (internal quotation marks omitted)). Here, Defendants argue that all of Plaintiffs' claims must be dismissed as time barred under New York's statute of limitations. Based on the allegations in the Complaint, as well as certain other materials properly considered on this motion to dismiss, the Court agrees.

### a.    *Plaintiffs' Claims Are Subject To A Three-Year Statute Of Limitations*

New York Civil Practice Law and Rules ("CPLR") provides that "an action to recover a chattel or damages for the taking or detaining of a chattel . . . must be commenced within three years," CPLR § 214(3), computed from "the time the cause of action accrued to the time the claim is interposed," CPLR § 203(a). While this three-year statute of limitations unquestionably

---

[4] However, Defendants do argue that New York's statute of limitations should apply to Plaintiffs' claims. (Def. Br. at 5.)

applies to Plaintiffs' claims for conversion and replevin, the Court concludes that it applies to the remaining claims in the Complaint as well.

It is well settled that "[i]n applying the Statute of Limitations, courts must look to the essence of the claim, and not to the form in which it is pleaded." *Kapernekas v. Brandhorst*, 638 F. Supp. 2d 426, 428-29 (S.D.N.Y. 2009) (quoting *Green Bus Lines, Inc. v. Gen Motors Corp.*, 169 A.D.2d 758, 759 (2d Dep't 1991)). Insofar as the gravamen of Plaintiffs' claim for breach of fiduciary duty is that Defendants violated a duty by wrongfully converting the Bible, that claim actually sounds in conversion or replevin. (*See* Compl. ¶¶ 38-44.) Plaintiffs are therefore held to the three-year statute of limitations applicable to conversion and replevin, notwithstanding the label they have attached to their claim.[5] *See Kapernekas*, 638 F. Supp. 2d at 428-29 (citing *Gold Sun Shipping Ltd. v. Ionian Transport Inc.*, 245 A.D.2d 420, 421 (2d Dep't 1997)).

Similarly, although a claim for declaratory judgment generally is subject to the six-year limitations period prescribed by CPLR § 213(1), an exception applies where the claim "could have been made in a form other than an action for declaratory judgment . . . and the limitations period for an action in that form has already expired." *See Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 481-82 (S.D.N.Y. 2010), *aff'd* 403 F. App'x 575 (2d Cir. 2010) (quoting *New York City Health & Hospitals Corp. v. McBarnette*, 84 N.Y.2d 194, 201 (1994)). Here, given that Plaintiffs' claims for conversion and replevin would provide an adequate remedy for the same alleged harm Plaintiffs seek to redress through their claim for declaratory judgment, the

---

[5] Because Plaintiffs' claim for breach of fiduciary duty exclusively seeks monetary relief and is not based on allegations of actual fraud, it would be subject to a three-year statute of limitations, running from the time of the alleged conversion of the Bible, even if it was not duplicative of Plaintiffs' conversion claim. *See Saporito*, 909 F. Supp. 2d at 165; *see also Glynwill Investments, N.V. v. Prudential Secs., Inc.*, 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995) (quoting *Salzmann v. Prudential Secs., Inc*., 1994 WL 191855 (S.D.N.Y. May 16, 1994)).

time for asserting a claim based on that alleged harm cannot be extended through the "simple expedient of denominating th[is] action [as] one for declaratory relief." *See Id.*

Finally, "it is settled law that where, as here, both a legal and an equitable remedy exists as to the same subject-matter, the latter is under the control of the same statutory bar as the former." *See Id.* (quoting *Keys v. Leopold*, 241 N.Y. 189, 189 (1925)); *accord Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281 (2d Cir. 1986). Accordingly, New York's three-year statute of limitations for conversion and replevin applies to all of Plaintiffs' claims.

### b. Accrual Of Plaintiffs' Claims: The "Demand-and-Refusal" Rule

Under New York law, a claim for conversion and replevin accrues, and the statute of limitations begins to run, "when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court." *State v. Seventh Regiment Fund Inc.*, 98 N.Y.2d 249, 259 (2002) (quoting *Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 43 (1995)). Consistent with that standard, New York recognizes a special "demand-and-refusal" rule in cases in which a defendant initially possessed property in good faith, but later converted it. *See Grosz*, 772 F. Supp. 2d at 481-82; *see also Kunstammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1161 (2d Cir. 1982). Where applicable, for instance in the case of a bona fide purchaser of stolen property, that rule holds that a conversion claim does not accrue until "the true owner makes a demand for the return of the property and the possessor refuses to return it." *See Hui Qun Zhao v. Yu Qi Wang*, 2013 WL 269034, at *4 (E.D.N.Y. Jan. 24, 2013), *aff'd* 558 F. App'x 41 (2d Cir. 2014); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 181-83 (2d Cir. 2000); *Grosz*, 772 F. Supp. 2d at 481-82.

Plaintiffs argue that the demand-and-refusal rule applies in this case and consequently delays the triggering of the statute of limitations, as the Bible allegedly was lent in good faith to

Gurewicz and only converted at some later time when Defendants refused to return it. Specifically, Plaintiffs contend that: (*i*) no "formal[ ] demand" was made for the Bible until Plaintiffs' counsel sent a letter to Defendants in November 2013, directing them to return the Bible; and (*ii*) there was no refusal to return the Bible until January 2014, when Vitullo, claiming to speak on behalf of Defendants in response to counsel's letter, allegedly told Plaintiffs that Defendants possessed the Bible, but would not return it. (*See* Pl. Opp'n at 8-9.)

However, even accepting Plaintiffs' argument that the demand-and-refusal rule applies, Plaintiffs' own allegations and submissions establish that their claims for conversion and replevin accrued, at the latest, on December 23, 2008. On or around that date, a default judgment was entered against Defendants in a Rabinnical arbitration initiated by Cohn. That judgment allegedly resulted from Defendants' withdrawal from the arbitration, despite their initial participation, after Ms. Greenberg told the arbitrator that she "was not comfortable simply returning [the Bible]" to Plaintiffs. (*See* Cohn Aff. ¶ 20.)

The default judgment was accompanied by a letter, issued by the presiding arbitrator, which explicitly stated: "Cohn and his family now have permission to take [Defendants] to any secular court to retrieve their [Bible] and to use all other legal means which may lead to the [Bible] being returned to them." (*See* Cohn Aff. ¶ 20 with Ex. B.) The letter further stated that Cohn and his family "had for [a] very long time approached [Defendants]" seeking the return of the Bible, and "ma[d]e very clear to [Defendants] that [the Bible] was not [their] belonging." (*See* Ex. B to the Cohn Aff.) Despite the fact that Cohn and his family had "requested [that the Bible] be returned" to them as the rightful owners, Ms. Greenberg allegedly advised them that she was "going to keep it and that [her] children would find use for it." (*See Id.*)

The Court concludes that Cohn's initiation of the Rabbinical arbitration in 2008 constituted a demand for the return of the Bible. *Feld v. Feld*, 279 A.D.2d 393, 394-95 (1st Dep't 2001) ("A demand need not use the specific word 'demand' so long as it clearly conveys the [demander's] exclusive claim of ownership.") Furthermore, while Cohn allegedly brought that proceeding individually, his demand for the Bible in the arbitration necessarily was made on behalf of all those family members who claim to own an interest in it. Defendants cite to no authority, and this Court is aware of none, that would support a contrary holding that each individual Plaintiff was required either to actively affirm Cohn's demand for the Bible, or make a unique demand of his or her own.[6]

It follows that Plaintiffs' claims for replevin and conversion accrued when Defendants refused the demand for the Bible embodied by the arbitration. The Court's analysis of that question begins from the proposition, rooted in New York law, that a refusal need only "convey[ ] an intent to interfere with the demander's possession or use of his property." *Id.* at 395; *see also Grosz*, 772 F. Supp. 2d at 484. Thus, courts have not recognized any formalistic requirement that a possessor must announce his refusal by invoking the words, "I refuse." *See Grosz*, 772 F. Supp. 2d at 484; *see also Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 469 (S.D.N.Y. 2010); *Spanierman Gallery v. Merritt*, 2004 WL 1781006, at *5 (S.D.N.Y. Aug. 10, 2004). Instead, a court must examine a possessor's conduct, and not his words alone, to determine if and when a demand has been refused. That inquiry is necessarily informed by the purpose of the demand-and-refusal rule, which is to provide an innocent purchaser with a fair opportunity to return chattel in his possession after being made aware that it was stolen. *See Grosz*, 772 F. Supp. 2d at 484. Accordingly, once it is provided, that opportunity is refused

---

[6] Plaintiffs' own allegations and arguments indeed suggest that Cohn's requests to Defendants to return the Bible were made expressly on behalf of all Plaintiffs. (*See, e.g.,* Pl. Opp'n at 20 n.12 ("Defendants continuously admitted to Cohn that the Bible belonged to the Arakie Cohen Children."))

whenever thereafter the possessor "acts . . . inconsistent[ly] with the demander's claim to ownership." *See id.*

Mindful of the foregoing principles, the Court concludes that Defendants refused Plaintiffs' demand for the Bible by no later than December 23, 2008, when the default judgment was entered against Defendants in the Rabinnical arbitration, and the arbitrator issued a letter stating that Cohn and his family were entitled to use all legal means in the secular courts to recover the Bible. (*See* Cohn Aff. ¶ 20-22 with Ex. B.) By that time, Cohn allegedly had been engaged in efforts to recover the Bible from Defendants for approximately eight years, all to no avail because he was repeatedly rebuffed by Ms. Greenberg. (*See* Cohn Aff. ¶¶ 10-22.) As early as 2004, in fact, Ms. Greenberg overtly and expressly resisted Cohn's requests that the Bible be returned. (*See id.* ¶¶ 17; *see also* Pinczower Aff. ¶¶ 6, 11-17).

Thereafter, Defendants failed to return the Bible upon the commencement of the arbitration, then allegedly withdrew from that proceeding and subsequently broke off contact with Cohn. (*See* Cohn ¶¶ 20-22.) Those actions, coupled with a pattern of prior conduct allegedly spanning several years during which Defendants continuously retained the Bible despite Cohn's requests for its return, were fundamentally "inconsistent with [Plaintiffs'] claim to ownership." *See Grosz*, 772 F. Supp. 2d at 484. Even if Ms. Greenberg at times acknowledged that Plaintiffs were the rightful owners of the Bible, as Cohn alleges, (*see* Cohn Aff. ¶¶ 17, 22), Defendants' purported conduct notwithstanding such acknowledgments clearly manifested an "intent to interfere" with Plaintiffs' possession and use of the Bible. *See Grosz*, 772 F. Supp. 2d at 483-84, 486; *see also Borumand v. Assar*, 2005 WL 741786, at *14 (W.D.N.Y. Mar. 31, 2005) (demand for property refused where possessor "continually maintained that he would [turn over the property] at some future time" but nevertheless

maintained possession); *Feld*, 279 A.D.2d at 395. As such, by the time Defendants' conduct culminated in the entry of a default judgment in the Rabbinical arbitration on or around December 23, 2008, Plaintiffs' demand for the Bible had been refused, and their claims for conversion and replevin accrued.

Therefore, Plaintiffs had until December 23, 2011 to bring an action against Defendants for conversion of the Bible, but did not do so until the Complaint in this matter was filed in July 2014. By that time, Plaintiffs' claims for conversion and replevin had long since expired, bringing some measure of finality to a dispute whose roots trace back to 1960, and concern a Bible perhaps significantly older. Accordingly, much like the Bible itself, Plaintiffs' claims are but artifacts now.

### c. Equitable Tolling Is Not Warranted

Invoking the doctrine of equitable tolling, Plaintiffs argue that this action is not time barred because it was not until 2013, at the earliest, that any of the Plaintiffs other than Cohn came to know that the Bible was in Defendants' possession. (*See* Pl. Opp'n at 20 n.12.) As an initial matter, the timeline suggested by Plaintiffs' argument strains credulity. It would entail finding that: (*i*) Cohn, who allegedly had known since at least 1973 that the Bible was lent to Gurewicz for a "brief" study (*see* Cohn Aff. ¶ 7), pursued recovery of the Bible from Defendants over the course of thirteen years, beginning sometime in 2000, without any mention of it to the other members of his family claiming equal ownership; (*ii*) Cohn, in 2003 or 2004, nevertheless informed his nephew of his efforts, who similarly sought to recover the Bible without mentioning it to his mother, a Plaintiff, or any other Plaintiff besides Cohn (*see* Pinczower Aff. ¶¶ 3-18); and (*iii*) the arbitrator presiding in the Rabbinical arbitration inaccurately stated that, prior to 2008, "Cohn *and his family*" had communicated with Defendants concerning the Bible

(*see* Ex. B to the Cohn Aff.) (emphasis added). In fact, statements made by Plaintiff Mechel Handler in his declaration directly contradict Plaintiffs' contention that, with the exception of Cohn, they had no knowledge until 2013 that Defendants were in possession of the Bible. (*See* Handler Aff. ¶¶ 3-6.)

Nonetheless, a motion to dismiss is directed to the sufficiency of the complaint, not the veracity of a plaintiff's allegations, and, therefore, the Court confines its analysis to whether the pleadings support equitable tolling of the statute of limitations. They do not. Equitable tolling is available only in "rare and exceptional cases where extraordinary circumstances prevented a party from timely performing a required act, and the party acted with reasonable diligence throughout the period to be tolled." *Daisley v. FedEx Ground Package Sys., Inc.*, 2008 WL 5083009, at *3 (E.D.N.Y. Dec. 1, 2008), *aff'd* 376 F. App'x 80 (2d Cir. 2010) (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)) (internal quotation marks omitted); *see also Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (explaining that New York law provides for equitable tolling "when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."). A plaintiff bears the burden of establishing a right to equitable tolling, which is not met if he cannot "articulate[ ] any acts by defendants that prevented [him] from timely commencing suit." *See Abbas*, 480 F.3d at 642 (quoting *Doe v. Holy See*, 17 A.D.3d 793, 796 (3rd Dep't 2005)).

Here, Plaintiffs have not satisfied their burden to establish equitable tolling because they do not plead any fraud, misrepresentation, deceit, or any other act by Defendants that "prevented [them] in some extraordinary way from exercising [their] rights" with respect to the Bible. *See Grosz*, 772 F. Supp. 2d at 488-89 (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)). At best, Plaintiffs argue that Cohn was dissuaded from bringing suit earlier because Defendants

"did not deny his rights to the Bible." (Pl. Opp'n at 20.) However, as already discussed, that is precisely what Defendants did by their deeds in continuously retaining the Bible despite Cohn's claim to ownership and repeated requests that it be returned.

Even if Cohn was misled by Defendants' alleged assurances that Plaintiffs were the Bible's rightful owners, his reliance on those statements would not have been reasonable after Defendants withdrew from the Rabbinical arbitration and a default judgment was entered against them. *See Grosz v. Museum of Modern Art*, 403 F. App'x 575, 577-78 (2d Cir. 2010) (To establish equitable tolling, the "plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations"). Moreover, Plaintiffs' argument for equitable tolling fails on its face, as it does not identify any *specific* acts or statements by Defendants that caused Plaintiffs to refrain from filing suit. Instead, Plaintiffs' argument amounts to a bare assertion that equitable tolling is appropriate and renders this action timely, which, as a matter of law, is insufficient to establish that Plaintiffs are entitled to such relief. *Grosz*, 772 F. Supp. 2d at 490.

### d. The Court Declines To Convert The Motion To One For Summary Judgment

As a general rule, "[w]hen presented with material outside of the pleadings pursuant to a 12(b)(6) motion to dismiss, the district court must either disregard such material or give the parties notice that the motion is being converted to one for summary judgment and permit the parties to submit evidence accordingly." *Kopec v. Coughlin*, 922 F.2d 152, 155-56 (2d Cir. 1991). However, that rule is subject to several recognized exceptions. As relevant here, in ruling on a motion to dismiss, a district court may consider extrinsic materials "integral to the plaintiff's claims—even if the plaintiff fails to append or allude to them in his complaint." *Grosz*, 772 F. Supp. 2d at 497 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)). In an action for conversion against a good faith purchaser of chattels, materials

"integral" to the plaintiff's claim may include those submitted to establish demand and refusal, which are considered substantive elements of the plaintiff's claim. *See Id.* at 496; *see also Kunstammlugen*, 678 F.2d at 1161; *DeWeerth v. Baldinger*, 836 F.2d 103, 107 n.3 (2d Cir. 1987).

To establish demand and refusal, Plaintiffs submit their attorney's November 21, 2013 letter to Defendants requesting the return of the Bible, as well as attestations concerning Defendants' purported refusal of that demand in January 2014. (*See, e.g.,* Newman Aff. ¶¶ 2-3 with Ex. D; Cohn Aff. ¶ 25; Handler Aff. ¶¶ 11-12.) However, the Court need not disregard other submissions by Plaintiffs that establish an earlier timeframe for demand and refusal, particularly the December 23, 2008 letter issued by the presiding arbitrator in the Rabbinical arbitration initiated by Cohn, as well as statements in Cohn's declaration providing the context for that letter and the default judgment entered in the arbitration. (*See* Cohn Aff. ¶¶ 10-22 with Ex. B.) Those materials are integral to Plaintiffs' conversion and replevin claims, as they bear directly on the demand-and-refusal element of those claims that determines if and when Plaintiffs' cause of action accrued. *See Grosz*, 772 F. Supp. 2d at 496-97. Accordingly, the Court has properly considered those materials in ruling on the instant motion to dismiss.

It bears emphasis that those extrinsic materials were submitted by Plaintiffs themselves, not Defendants. As the Second Circuit has explained, the problem generally implicated when materials extraneous to the complaint are considered in a motion to dismiss is the "lack of notice to the plaintiff that they may be so considered." *Cortec*, 949 F.2d at 48. However, where a plaintiff has notice of the extrinsic materials to be considered, as Plaintiffs do here because they submitted the materials in question, "the necessity of translating a Rule 12(b)(6) motion into one

under Rule 56 is largely dissipated." *Id.* Thus, the Court declines to convert Defendants' motion to one for summary judgment.

## IV.     Defendants' Other Arguments For Dismissal & Plaintiffs' Motion to Supplement

Because the Court finds that all of Plaintiffs' claims are barred under the applicable New York State three-year statute of limitations, the Court declines to address Defendants' remaining arguments that the Complaint is subject to dismissal for lack of personal jurisdiction and failure to state a claim upon which relief may be granted. As Plaintiffs' motion to supplement their Opposition seeks the Court's consideration of materials relevant mainly to those arguments, the Court denies that motion as moot. In any event, consideration of the supplemental materials submitted by Plaintiffs would not alter the Court's determination that this action is untimely.

## CONCLUSION

In accordance with the foregoing, Defendants' motion is granted and the Complaint is dismissed. Because re-pleading would not cure the defect in Plaintiffs' claims, dismissal is with prejudice. *See Brandon v. Musoff*, 2012 WL 135592, at *4 (S.D.N.Y. Jan. 17, 2012) ("[W]hen a cause of action falls outside the applicable statute of limitations, dismissal with prejudice is justified.") Finally, Plaintiffs' motion to supplement is denied as moot.

SO ORDERED.

Dated: Brooklyn, New York
          September 23, 2015

                                                          /s/
                                                  _____
                                                  DORA L. IRIZARRY
                                                  United States District Judge